KING *et al.* v. UNION IRON CO. OF BUFFALO *et al.*

*(Supreme Court, General Term, Fifth Department.   October 23, 1890.)*

**1. FRAUDULENT CONVEYANCES—PREFERENCES BY CORPORATION.**
Where a creditor of a corporation, who is also a stockholder and director thereof, obtains judgment against it, with the co-operation of his associates in the board of trustees, the corporation being insolvent, the case is in violation of 1 Rev. St. N. Y. 603, § 4, prohibiting any officers of a corporation from assigning or disposing of

its property, for the payment of a debt, or from making any transfer in contempla-
tion of insolvency; and the judgment and the sale thereunder are void as to other
judgment creditors.

·2. SAME—LIEN OF JUDGMENT CREDITORS.
   But where, however, there is no intent .to defraud creditors, except as .derived
from the statute, and the judgment creditor, who purchased the property at the ex-
ecution sale, pays off a prior mortgage thereon, besides other outstanding indebt-
edness of the company, the lien of the other judgment creditors is subject to such mort-
gage and indebtedness.

Appeal from special term, Erie county.

Action by James H. King and another against The Union Iron Company
of Buffalo and Elisha P. Wilbur. Plaintiffs appeal from that part of the judg-
ment by which defendant Wilbur was subrogated to the rights of the holders
of the bonds of defendant company of Buffalo, in the sum of $280,000, secured
by a first mortgage upon the company's property, and subordinating plaintiffs'
judgment to such lien. Defendants also appeal from so much of said judg-
ment as declared that a judgment procured against the company by defendant
Wilbur on the 8th day of April, 1881, for the sum of $380,864.97, damages,
and costs, and the sale under such judgment, and the deed subsequently de-
livered in pursuance of such sale, were void, as against plaintiffs.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Charles B. Wheeler*, for plaintiffs. *George J. Sicard*, for defendants.

MACOMBER, J.  The defendant, the Union Iron Company of Buffalo, which
was organized in 1872, carried on business at the city of Buffalo, until the year
1880.  The plaintiffs brought an action upon contract against that corporation
on the 19th day of October, 1881, which resulted in a judgment in their favor in
the sum of $20,000 damages, besides costs, and the same was entered on the
7th day of April, 1883.  The defendant Elisha P. Wilbur, from the organization
of the company, was a trustee thereof, and one Ario Pardee was likewise a trus-
tee, and the president of the corporation.  Prior to the month of March, 1881,
this corporation had become indebted in a large sum of money to the firm of
which Ario Pardee was a member, known as Ario Pardee & Co., and to Asa
Packer, of the state of Pennsylvania.  The indebtedness to Ario Pardee &
Co. was substantially an indebtedness to Ario Pardee himself, as his only co-
partner in the concern had died before any question pertaining to this litiga-
tion arose.  Asa Packer died in the year 1879, being a large creditor of the
company.  The defendant Wilbur was one of the executors and trustees un-
der the will of Asa Packer.  The whole indebtedness to the estate of Packer
and to Pardee amounted to upwards of $380,000, being for moneys actually
advanced to and used for the company in carrying on its business, and was
represented by commercial paper held respectively by these creditors.  By an
arrangement with the creditors, the defendant Wilbur, being a stockholder
and director of the iron company, was made a trustee for the collection of this
indebtedness, the particulars of which arrangement it is not necessary to
mention in this connection.  An action brought by him against that com-
pany resulted in a recovery by him of a judgment of $380,864.97.  An execu-
tion was issued upon such judgment, and the personal property of the cor-
poration, which was first sold under execution, netted only the sum of $22,-
266.23.  Subsequently, the real estate mentioned in the complaint, being the
whole of the remaining property of the iron company, was sold upon the
same execution, and was bid in by the defendant Wilbur for $2,000.  These
proceedings culminated in a deed executed by the sheriff in due form to the
defendant Wilbur, on the 24th day of April, 1884.  The purchase so made by
Wilbur was subject to liens amounting to $280,000, secured by a mortgage
upon the whole of the real estate of the corporation, bearing date the 1st of
September, 1879, and a second mortgage of the same date for $150,000.  By
this transaction Wilbur became possessed, either in his own right or for the

benefit of the Packer estate and Mr. Pardee, of all the property, both real and personal, of the iron company.

This action is brought to obtain relief for violation of the provision of the Revised Statutes (1 Rev. St. p. 603, § 4) prohibiting an insolvent corporation, or any of its officers, from assigning or disposing of its property for the payment of a debt, and prohibiting any assignment or transfer in contemplation of insolvency. The learned trial court has found as facts, and such findings are supported either by direct evidence or by just inferences therefrom that all of the legal proceedings so taken by Wilbur were with the knowledge, consent, and co-operation of the board of trustees of the defendant, the Union Iron Company of Buffalo, or a majority thereof. This finding and the evidence in its support bring the case within the condemnation of the statute, and enable the plaintiffs to prosecute the lien of their judgment against the property of the defendant, the iron company, which has not passed into the hands of innocent third parties for value, to the same extent as though the judgment so procured by Wilbur had never been obtained and enforced. *Paulding* v. *Steel Co.*, 94 N. Y. 334; *Kingsley* v. *Bank*, 31 Hun, 329. The purpose of this statute is to prevent unjust discrimination; and while it is competent for the corporation to permit creditors to take hostile proceedings by which a preference may be obtained through vigilance, and may even suffer default in an action upon a just claim, as was held in the case of *Varnum* v. *Hart*, 119 N. Y. 101, 23 N. E. Rep. 183, yet, when the creditor, who is also a stockholder and director of a corporation, undertakes thus to obtain a preference by an action at law, with the co-operation of his associates in the board of trustees, the case is brought directly within the condemnation of the statute, and amounts to an unlawful preference by way of assignment and transfer of property in contemplation of insolvency. In this case, however, there was no intent to defraud any of the creditors of the corporation, except as the same is necessarily derived from the statute itself. No moral turpitude attaches to either Wilbur or any of his associates. They have throughout acted in good faith and without intent to defraud any particular creditor. The evidence does not warrant, nor has there been made, any finding by the learned trial court to the contrary. Under these circumstances, while the action of Wilbur cannot be justified under this statute, yet no judgment by way of punishment can be permitted to be given; but the most that the court ought to do, as was actually done by the special term, is to restore the parties, so far as it can, to the condition in which they were at the time of the recovery of the judgment by Wilbur. Since the sale under that judgment, Wilbur, either in his own behalf or in behalf of the persons for whom he was acting, has paid off entirely the mortgage to the amount of $280,000, which was a first lien upon the whole of the real estate of the iron company, besides making other large payments for outstanding indebtedness, and for carrying on the business of the concern. The lien of the plaintiffs' judgment was from the beginning subordinate to the lien of this first mortgage. It would, therefore, be unjust and inequitable to permit such judgment to come in at the present time, and be declared a lien prior to such mortgage. Hence it is that the court seems to have performed its whole duty, under the statute, in restoring the lien of the 208,000-dollar mortgage which had been innocently, though voluntarily, paid by Wilbur, and permitting the lien of the plaintiffs' judgment to remain exactly as though there had been no sale under the Wilbur judgment. This certainly is all that the plaintiffs ought to demand. Should further relief be granted to them, and their judgment be declared superior to the lien of the first mortgage, a punishment would be visited upon the parties who carried on this enterprise, which the facts of the case would not justify. But it is contended by the learned counsel for the plaintiffs that the defendant Wilbur ought to be charged with certain machinery belonging to the iron company which was taken from the plant and sold by him,

·amounting,·in all, to about $12,000. Assuming that the property thus taken and sold was covered by the mortgage, yet no allowance therefore can be had .by the plaintiffs upon this appeal, for various reasons,—one of which is that there was no request to the trial judge to find that such property was covered by the mortgage, or that the security of such mortgage was impaired by such sale. · Furthermore, it is shown, that Wilbur had paid out since the 1st day of March, 1882, in behalf of the estate of Asa Packer and for Pardee, on account of the real estate, the sum of $98,116.51, and had received only the sum of $53,782.28, leaving the sum of $34,334.23 of expenditures, in excess of receipts, on account of the real estate. This does not include the sum of $38,060.26, being for current expenses, insurance, and taxes, which alone the learned judge at the special term could have had in mind in making the remark, in his opinion, that it might be assumed that the value of the use of the premises was equal to the taxes and insurance. The judgment appealed from should be affirmed. All concur.